Davis, Judge,
delivered the opinion of the court:
Plaintiff sues for $800,000 damages said to have been sustained as a result of the defendant’s refusal to deliver the surplus cruiser “Augusta” to him and its delivery, instead, to one of the third parties, Union Minerals and Alloys Corporation. The case plaintiff puts forth in his petition is that, pursuant to an advertisement for bids by the Navy Department, he bid $262,291.95 for the ship, with the objective of scrapping or reselling it; this bid was accepted by the Navy and (plaintiff alleges) he deposited a certified check for the amomit of the bid and a performance bond, and demanded delivery; defendant, however, refused to deliver the vessel to him but delivered it to Union Minerals, “an alleged creditor of plaintiff.” Plaintiff has not moved for summary judgment but states that he desires a trial to prove these allegations.
The defendant’s case, as made in its answer and in affidavits supporting its motion for summary judgment, is that *49 before the final sale plaintiff irrecovably assigned the “Augusta” to Union Minerals and directed defendant to deliver the ship to that company, which had put up the full purchase price, as the new owner. Since the defendant had required Union Minerals to execute an indemnity agreement before the vessel was delivered to it, the defendant has impleaded that company as well as Hugo Neu Corporation (the parent of Union Minerals) to come in and defend plaintiff’s suit and save the defendant harmless. The defendant and the third parties have moved for summary judgment on the ground that the plaintiff has no claim against the Government.[1]
In support of their position that Union Minerals was the new owner to whom the vessel was properly delivered, the defendant and the third parties rely upon the following documents: (i) a letter of November 9, 1959, the day the bids were opened, from plaintiff’s authorized agent to Union Minerals, notifying that company that it appeared plaintiff was the high and successful bidder for the “Augusta”, and that he did thereby “sell, assign and transfer all of his right, title and interest in the said sale contract and vessel as specified above to Union Minerals and Alloys Corp”; (ii) a letter of November 13,1959, from Union Minerals to the Navy, informing the defendant of this purchase of the vessel from the plaintiff; (iii) a letter of November 18, 1959, from plaintiff to Union Minerals, stating:
Pursuant to our contract of sale dated November 9,1959, you are this day delivering to the New York Naval Shipyard your certified check dated November 16,1959_to the order of the Treasurer of the United States in the amount of $262,291.95, which check, together with the Performance Bond provided by you, has been tendered against delivery of Cruiser CA-31 to you or your authorized representative.
This will confirm that all right, title and interest in and to Cruiser CA-31 vests in you as and when your payment is made to the Navy, and that we have no further right in or claim to the above vessel, of which you are now the owner.
*50 (iv) a letter from plaintiff to the Navy Department, dated November 18, 1959, which reads in pertinent part:
Pursuant to your request, the following are being delivered to you today:
(1) Performance Bond in the amount of $269,291.95, which is furnished pursuant to paragraph 25 of the above contract.
(2) Certified Check to the order of the Treasurer of the United States, issued by Union Minerals & Alloys Corporation, dated November 16,1959, in the amount of $262,291.95, constituting payment in full pursuant to paragraphs 5 and 6 of the above contract.
All of the right, title and interest of the undersigned in and to Cruiser CA-31 has been irrevocably sold and transferred to Union Minerals & Alloys Corporation of 45 Nassau Street, New York, New York, which is now the owner of Cruiser CA-31. Accordingly, we herewith irrevocably authorize you to release and deliver Cruiser CA-31 to Union Minerals & Alloys Corporation or its authorized representative, and the above Performance Bond and Certified Check are tendered to you against delivery of Cruiser CA-31 to Union Minerals & Alloys Corporation or its authorized representative as aforesaid.
On the basis of these materials, the moving parties assert that, so far as the defendant was concerned, Union Minerals had paid for and was the owner entitled to receive the vessel under an irrevocable assignment made by the plaintiff.
Although there is no suggestion in the moving affidavits that the Government knew or suspected that the transaction between plaintiff and Union Minerals was other than an outright sale, it does appear that the defendant’s officials were aware, before they delivered the “Augusta”, that a dispute had arisen as to who had the right to the vessel. According to these affidavits, the defendant first tried to resolve the dispute and then, reconciliation failing, delivered the vessel (in March 1960) to Union Minerals in accordance with the written instructions given it by plaintiff in November 1959 — taking the precaution, however, to obtain an indemnity agreement from Union Minerals.
If the facts are as the defendant and the third parties present them, plaintiff clearly has no case. On their view *51 of what occurred, defendant was fully entitled to consider Union Minerals the owner of the vessel to whom delivery should be made. Union Minerals had paid for the ship; plaintiff had irrevocably assigned it, and had instructed that delivery be made to Union Minerals; although plaintiff had sought to repudiate the assignment, Union Minerals was standing by it; there was nothing to indicate that the transaction was not an outright sale by plaintiff and purchase by Union Minerals. In those circumstances, the only barrier to delivery by the defendant to Union Minerals would be the limitations of the Anti-Assignment Act, 41 U.S.C. § 15,-and the defendant could properly choose to waive those prohibitions. Maffia v. United States, 143 Ct. Cl. 198, 163 F. Supp. 859 (1958); G. L. Christian and Associates v. United States, 160 Ct. Cl. 1, 10 (1963), 312 F. 2d 418, 422-23, cert. denied, 375 U.S. 954.
The rub is that the plaintiff, who filed no significant affidavits (or other materials) prior to argument on the motions for summary judgment, told a very different story at the argument. Overlooking plaintiff’s failure to comply with the normal requirement that a party combatting such a motion on the facts should file his opposing affidavits or materials before argument, the court permitted him, at the close of oral argument, to file affidavits supporting his view of the transaction. Such affidavits have now been filed and they make a series of explicit factual assertions which call for testing by a full trial, if they are at all pertinent. Plaintiff’s account says, in summary, that (a) despite the unequivocal wording of the documents signed by the plaintiff and given to the defendant, the plaintiff did not sell the vessel to Union Minerals but merely pledged it as security for Union Minerals’ putting up of the money, with plaintiff remaining the purchaser and with the understanding that Union Minerals would obtain the ferrous scrap and plaintiff the non-ferrous scrap; (b) this loan arrangement was fully known to the defendant, at all relevant times, both because Government representatives were so told and because another cruiser (the “Louisville”) had previously been sold by the Government to the plaintiff on precisely the same basis; (c) it was also well known to the interested public and the trade that plaintiff *52 was the purchaser of the vessel; (d) the third parties initially attempted to breach this arrangement because the price of ferrous scrap fell after the award, and later sought to obtain the entire vessel for themselves so as to get control of the non-ferrous material; and, finally, (e) upon the third parties’ breach, the plaintiff cancelled the arrangement, informing the defendant of that fact and of his intention to take the vessel for himself as its true purchaser.
At this stage, we clearly cannot decide against plaintiff on the facts (Poller v. Columbia, Broadcasting System, Inc., 368 U.S. 464, 467, 472-73,477-78 (1962); Fountain v. Filson, 336 U.S. 681, 683 (1949); Associated Press v. United States, 326 U.S. 1, 6 (1945)).[2] And we can only hold against him on an issue of law if we accept fully the factual story his affidavits tell. We do not know to what extent, if any, these allegations would ultimately be supported, but we are unwilling to hold now that he could not prevail even if his entire claim were found to be true. We are also unprepared to hold, at this time, that he should recover from the United States if he sustains his allegations.
The legal issues arising from plaintiff’s version are not simple, and they have been briefed and argued only in the most sketchy manner.[3] Their resolution might well depend on the particular facts as they are actually found to be, and in any event the legal questions will be illuminated by knowledge of what actually occurred. A transaction appearing on its surface to be an outright sale can be revealed as no more than a pledge or security arrangement, leaving title still in the “vendor.” See, e.g., Dollar v. Land, 184 F. 2d 245 (C.A.D.C., 1950), cert. denied, 340 U.S. 884 (1950). If this were so here and defendant knew that what seemed to be an absolute and irrevocable assignment was not such at all, the defendant’s obligation, when the dispute arose, might have been to hold the vessel until the controversy was settled by the private parties, or possibly to institute an interpleader *53 action, or perhaps to give the vessel to the named purchaser — the plaintiff. The formal words of the “assignment” might have to be disregarded as inoperative if the reality of the transaction were known to be different. On the other hand, it may be that the Government could rest on the written words of the “assignment”, despite its full knowledge that those papers did not mean what they said. The dissent is ready to adopt the latter view, but we would wait until we can assess the true facts before passing on the issue. On plaintiff’s theory the truth of the transaction, as a whole, was not reflected in the written papers. He insists that the Government knew all the while that what purported to be an “irrevocable assignment” was merely an arrangement to secure a loan by Union Minerals to plaintiff, and accordingly that the Navy itself treated the plaintiff as the purchaser even after it was fully aware of the technical shape of the “deal” between Union Minerals and plaintiff. He says, for instance, that the award of the ship was made to Mm on November 12, 1959, although the Navy already knew of his earlier “assignment” (on November 9th) to Union Minerals; and he also alleges that the “assignment” in this case was in the same form as in the prior transaction on the “Louisville” — a transaction during which, he asserts, he was treated as the owner-purchaser entitled to the vessel. We know, too, that the Navy was sufficiently unsure of its position that it exacted an indemnity agreement from Union Minerals before giving it the “Augusta.”
If the Government knew that, despite the face of the documents, Union Minerals was simply a banker which had lent money to plaintiff in return for a lien on the “Augusta”, we are not certain that the defendant would be absolved from liability to plaintiff, the purchaser to whom the ship was awarded, when it chose to turn over the vessel to the banker on account of the formal words of the letter plaintiff had sent to the Navy or because the banker’s check had been used by plaintiff to pay for the ship. The answers to that and the related questions are not plain to us at this time. We say no more because we wish to leave ourselves wholly free to consider and decide the legal points in the light of the facts as they are developed.
*54 In view of plaintiff’s detailed affidavits, we deny the motions for summary judgment without prejudice, and remand the case for trial by the commissioner.

 Plaintiff has not at any time sued union Minerals.

 Defendant and tie third parties have not answered the allegations in plaintiff’s affidavits with counter-affidavits, although they obviously do not agree with plaintiff’s version. Of course, we could not resolve the factual questions on a motion for summary judgment even if opposing assertions were made.

 This happened, no doubt, because plaintiff did not support his understanding of the facts until after the oral argument.